IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |
|---|---|
| MICHELE FIELDS,<br>Plaintiff, | *<br>*<br>*<br>* |
| v. | *<br>*<br>* Civil Action No. 10-cv-02484-AW |
| VERIZON SERVICES CORP.,<br>Defendant. | *<br>*<br>*<br>* |

**************************************************************************

### Memorandum Opinion

Plaintiff Michele Fields ("Fields") brings this action against Defendant Verizon Services Corp. ("Verizon"), alleging that Verizon discriminated against Fields on the basis of disability in violation of the Montgomery County Human Rights Act, Art. 1, § 27-19 of the Montgomery County Code, and retaliated against Fields for taking Family Medical Leave Act ("FMLA") leave in violation of the FMLA, 29 U.S.C. § 2601 *et seq*. Currently pending before the Court is Verizon's motion for summary judgment. *See* Doc. No. 21. The Court has reviewed the motion papers submitted by the Parties and finds that no hearing is necessary. *See* Md. Loc. R. 105(6) (D. Md. 2010). For the reasons that follow, the Court GRANTS Verizon's motion for summary judgment.


I.      **FACTUAL & PROCEDURAL BACKGROUND**

A.      Fields' Employment with Verizon

Plaintiff Fields was employed by Verizon from June 6, 1982 until December 24, 2009, when she was terminated pursuant to a reduction in force ("RIF"). At the time of her termination,

Fields was employed as a Senior Consultant in Verizon's Requirements Group. Fields reported to Eva Drum ("Drum"), one of several managers for the Requirements Group. Drum reported to Joseph Milla, the director of Regional Operations.

The Requirements Group writes functional requirements for system enhancements. When Verizon launches a new product, the Requirements Group is charged with writing the requirements, or set of rules, so that the software developers can implement the programming and code into Verizon's system. Drum's team handled the build-out of Verizon's Converged Front end Engine ("CoFEE") system, which is used by Verizon sales representatives to place orders, including Fiber Optic Service ("FiOS") orders, review bills and make adjustments. Fields worked extensively on projects that supported FiOS, but she testified that she has never worked on any projects that were exclusively focused on FiOS.

Fields was never rated as a substandard performer at Verizon but was rated as "Performing" in her 2008 "Year-End Performance Assessments." Verizon acknowledges that Fields was not selected for termination pursuant to the RIF because she was in any way considered a substandard performer.


B.      Fields' Breast Cancer Diagnosis

Around April 2009, Fields was diagnosed with breast cancer. Following her diagnosis, Fields requested and was provided with a leave of absence by Verizon from around May 2009 to August 31, 2009. Fields received all of her available FLMA leave and was provided with additional leave under Verizon's short-term disability plan. Fields received her full salary during her leave period. On May 21, 2009, she had a lumpectomy and lymph node extraction and has been "cancer free" as of that date.

When Fields returned to work on August 31, 2009, she was still on short-term disability. She was receiving chemotherapy treatments every three weeks. Fields would take full days off the day of her treatment through the following week and then work half days until the next chemotherapy treatment. Upon returning to work, Fields asked Drum if she could work from home because Fields' doctors were concerned that her immune system would be compromised during her chemotherapy treatments. Drum said that she would clear the request with Milla, Drum's supervisor, because she had to send Milla reports letting him know who was off, working at home, or working in the office. Fields' last chemotherapy treatment was on October 22, 2009. On or about November 23, 2009, Fields was released to return to work full-time. Fields was notified the next day, November 24, that she had been selected for a RIF.

Fields states that Drum was supportive of her overall during Fields' treatment and recovery. However, at one point while Fields was on leave, Drum mentioned to Fields that a hairdresser Drum knew had breast cancer and was working during her treatment. Fields took this as a suggestion by Drum that Fields should not be taking off so much time from work.


C.    Fields' Selection for RIF

Verizon announced a company-wide RIF in June 2009. In order to determine which employees would be selected for the RIF, the Requirements Group managers were asked to put together a ranking of the 19 non-manager employees on the Requirements team. Drum had six employees reporting to her. Limiting the ranking list to only those employees on Drum's team, Fields ranked fifth out of six. These rankings were consistent with rankings Drum had previously submitted in December 2008, reflecting the "year-end performance ratings" for the employees on Drum's team. Drum stated that the criteria she used in arriving at her December 2008 rankings

3

was the same as that used for the purposes of the RIF, i.e., subject matter expertise, business knowledge, and the types of projects each individual worked on. At the time of the June 2009 RIF, Fields had been off work for almost two months. At the time of the December 2008 rankings, however, Fields had not yet been diagnosed with breast cancer.

Although Fields ranked fifth out of Drum's six employees during the June 2009 RIF, her overall ranking was 13 out of the 19 Requirements team employees. As a result of the June 2009 RIF, only the employees ranked 16 through 19 were terminated or transferred to other teams. Thus, Fields was not among those employees selected for termination pursuant to the June 2009 RIF.

In October 2009, Verizon announced another company-wide RIF. Milla, Drum's supervisor, had recently assumed the Director position over the Requirements Group. Once informed of the upcoming RIF, he directed Drum and the other managers to provide a ranking list of employees. Drum retrieved the Requirements Group ranking list from the June 2009 RIF, removing from the list those employees affected by the June 2009 RIF. Milla decided that Requirements Group employees ranked 13, 14, and 15 would be selected for the RIF. Fields was ranked 13, Ernestine Garlick ("Garlick") was ranked 14, and William Lesiak was ranked 15. Milla stated on a Verizon form that Fields was selected for the RIF because, although she was proficient in data/video services, she did not rank as high as her peers in overall knowledge and execution. Milla used the same language to describe why Garlick was selected for the RIF.

Milla later learned that he could save two employees from the RIF. He elected to save one employee from the Testing Group and one from the Requirements Group. Milla decided that he would choose between the Requirements Group employees ranked 13 and 14 on the ranking list. Fields was ranked 13 and Garlick was ranked 14. In order to make his decision, Milla

contacted Drum, Fields' manager, and Joseph Borrelli ("Borrelli"), Garlick's manager. During

Milla's phone call to Borrelli, Borrelli explained that Garlick's skill sets and subject matter

expertise were in Requirements projects directly concerning Verizon FiOS, which represented

the present and future direction of the company and the area in which Verizon's business was

expanding the most rapidly. Borrelli advocated retaining Garlick.

During Milla's phone call with Drum regarding Fields, Drum stated that Fields' skill sets

and subject matter expertise were focused chiefly in Verizon's legacy system platforms such as

CoFEE, and that Fields' experience in regard to FiOS was limited. Milla ultimately chose to save

Garlick and claims that his decision was based on Garlick's FiOS experience.  Indeed, Garlick's

team focused exclusively on FiOS-related projects. Fields served as primary lead on several

projects that included FiOS products, but her team focused on projects related to the CoFEE

system.

On June 29, 2010, Fields filed suit in the Circuit Court for Montgomery County,

Maryland, for the following causes of action: discrimination based on disability in violation of

the Montgomery County Human Rights Act (Count I), and retaliation in violation of the FMLA

for terminating Fields for taking medical leave (Count II). *See* Doc. No. 2. Verizon removed

Fields' case to this Court. *See* Doc. No. 1. Now pending before the Court is Verizon's motion for

summary judgment in its favor on both claims asserted by Fields.


## II.        STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## III.     ANALYSIS

Fields asserts claims under the Montgomery County Human Rights Act for discrimination on the basis of disability and under the FLMA for retaliation for taking medical leave. After reviewing the record, the Court does not believe Fields' claims can survive summary judgment. The record shows that Fields' lack of direct and extensive FiOS-related experience, rather than a discriminatory or retaliatory intent, led to Fields' removal from her Senior Consultant position.

### A.      Discrimination on the Basis of Disability

The Court first addresses Fields' claim that her rights under the Montgomery County Human Rights Act were violated when she was removed from her position as Senior Consultant because of disability discrimination. Montgomery County Code ("MCC") Article I, Section 27-19 prohibits employers from discharging or otherwise discriminating against an individual on the basis of disability. *See* MCC, ART. 1, § 27-19. Section 27-6 defines disability as:

> [A] physical or mental impairment that substantially limits one or more of an individual's major life activities, a record of having such an impairment, being associated with an individual with a disability or being regarded as having such an impairment. The term also includes:
>
> (1) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, blood and lymphatic, skin and endocrine . . .

*Id.* at § 27-6.

Fields, who was diagnosed with breast cancer, argues that Verizon terminated her pursuant to its RIF because of her disability. Because the MCC's prohibitions against disability discrimination are modeled on the Americans with Disabilities Act ("ADA"), Maryland courts look to federal decisions interpreting the ADA when called upon to interpret the MCC. *See Ridgely v. Montgomery County*, 883 A.2d 182 (2005).[1] Accordingly, Fields' disability

---

[1] However, note that the MCC is not identical to the ADA. MCC § 27-1 provides: "The prohibitions in this article are substantially similar, but not necessarily identical, to prohibitions in federal and state law. The intent is to assure that a complaint filed under this article may proceed more promptly than possible under either federal or state law. It is not County policy, however, to create a duplicative or cumulative process for those existing under similar or identical state or federal laws."

discrimination claim is properly analyzed using the *McDonnell Douglas* burden-shifting

framework. *See*, *e.g.*, *Heiko v. Colombo Savings Bank*, 434 F.3d 249 (4th Cir. 2006). Fields may

prove the alleged violation of the MCC in either of two ways: (1) by "using any direct or indirect

evidence relevant to and sufficiently probative" of discriminatory purpose, or (2) by using the

burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973).

Fields contends that her claim succeeds under the *McDonnell Douglas* burden-shifting

approach. Under this scheme, the plaintiff must first must establish a *prima facie* case of

discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802.  To establish a *prima facie* case,

Fields must show that: (1) she was an individual with a disability; (2) she was selected for

discharge from a larger group of candidates; (3) she was performing at a level substantially

equivalent to the lowest level of those in the group retained; and (4) the process of selection

produced a residual work force of persons in the group containing some unprotected persons who

were performing at a level lower than that at which she was performing. *See Mitchell v. Data

Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993).

If the plaintiff meets this burden, the defendant must present a legitimate,

nondiscriminatory reason for the challenged conduct. *See Reeves v. Sanderson Plumbing Prod.,

Inc.*, 530 U.S. 133, 142 (2000) (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253

(1981)).  If the defendant succeeds in doing so, that will rebut the presumption of discrimination

raised by the plaintiff's *prima facie* case.  *See Stokes v. Westinghouse Savannah River Co.*, 206

F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10).  The plaintiff must then

"prove by a preponderance of the evidence that the legitimate reasons offered by the defendant

were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.  In the

end, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

Verizon concedes that Fields can establish the second and third elements, i.e., that Fields was selected for discharge from a larger group of candidates and that she was performing at a level substantially equivalent to the lowest level of those in the group retained. Thus, the only issues before the Court are whether Fields can be considered an individual with a disability under the MCC and whether Verizon retained non-disabled employees who were performing at a lower level than Fields. Verizon argues that Fields cannot establish a prima facie case because Fields was not disabled at the time of her termination. Moreover, Verizon argues that Fields cannot show that the employees retained were performing at a lower level than Fields. Verizon contends that even if Fields established a *prima facie* case, Verizon has established legitimate, nondiscriminatory reasons for removing Fields pursuant to its RIF: she was ranked at the bottom of employees in the Requirements Group even before her breast cancer diagnosis, and her FiOS-related skills were less strong than Garlick's. Verizon asserts that Fields has not offered any evidence to show that Milla's reasons for terminating Fields were pretext for a discriminatory purpose.

## 1. Fields is not an Individual with a Disability under the MCC

Fields contends that she should be considered an individual with a disability under the MCC, which defines disability as: (1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such impairment. MCC § 27-6. Verizon counters that Fields did not have a

disability in November 2009 at the time she was selected for termination because by her own admission, Fields has been cancer free since May 21, 2009.

Fields acknowledges that she was cancer free at the time of her termination but contends that she is still considered disabled under recent ADA amendments which broaden the definition of who is disabled under the ADA. *See* Pub. L. No. 110-325, 122 Stat. 3553 (2008). Those amendments, which became effective January 1, 2009, provide that an impairment that is episodic or in remission is considered a disability if it would substantially limit a major life activity when active. *See* 42 U.S.C. § 12102(4)(D). Fields points to two recent cases that have interpreted these amendments as qualifying cancer that is in remission as a disability under the Act. *See Hoffman v. Carefirst of Fort Wayne, Inc.*, 737 F. Supp. 2d 976 (N.D. Ind. 2010); *see also Norton v. Assisted Living Concepts, Inc.*, No. 4:10-cv-00091, 2011 WL 1832952, at *7 (E.D. Tex. May 13, 2011). Fields urges the Court to consider the *Hoffman* and *Norton* decisions in considering whether Fields qualifies as disabled under the MCC.

While Maryland courts generally look to federal decisions interpreting the ADA when called upon to interpret the MCC, the MCC provides that "the prohibitions in this article are substantially similar, but not necessarily identical, to prohibitions in federal and state law." *See* MCC § 27-1. No court interpreting the MCC has yet found that the amendments to the definition of "disability" under the ADA have been adopted as part of the MCC's definition of "disability." Moreover, the MCC's statutory definition of "disability" does not mention impairments that are "episodic or in remission" as being included in its definition of "disability." Thus, the Court declines to extend the interpretation of the ADA amendments adopted by the *Hoffman* and *Norton* courts to apply to the MCC here. Accordingly, the Court finds that Fields was not an

10

individual with a disability as defined by the MCC at the time her employment was terminated in November 2009.

2.      Verizon did not Retain Non-Disabled Employees who were Performing at a Lower Level than Fields

Fields contends that the employees retained by Verizon, particularly Garlick and Kelly Smothers ("Smothers"), were performing at a lower level than Fields and should have been selected for the RIF before her. Specifically, Fields contends that Garlick does not know how to log into CoFEE, view FiOS products in CoFEE or view billing for those products. Fields further asserts that Garlick does not know how to perform live demonstrations in CoFEE for ordering FiOS products, and that if Garlick needed to see how FiOS products, disclosures or bills were presented in CoFEE, she would ask Fields to log into CoFEE for her. Fields contends that Smothers did not work on large products and that Fields has more experience in the Requirements arena than Smothers.

Although Fields has shown that she has an extensive knowledge base in the CoFEE system and may know more than Garlick or Smothers in that area, the Court finds that Fields has not shown that Garlick or Smothers were performing at a lower level than Fields in the relevant area of FiOS-related experience. First, Fields was not selected for termination pursuant to the RIF because she was in any way considered a substandard performer. Fields, Garlick, and Smothers were all ranked as "Performing" in their 2008 "Year-End Performance Assessments," which were the final performance evaluations preceding the November 2009 RIF. Since all three employees were rated as "Performing," the managers did not base their rankings on the comparative job performance of the Requirements Group employees, but instead ranked each

11

employee in regard to his or her subject matter expertise and the types of projects each

supported. Drum first ranked Smothers ahead of Fields back in December 2008, before Fields

was diagnosed with breast cancer. Thus, for reasons unrelated to Fields' breast cancer diagnosis,

Fields rather than Smothers was chosen, along with Garlick, for potential termination pursuant to

the November 2009 RIF.

　　　　In deciding whether to retain Garlick or Fields, Milla spoke with both their managers.

From these conversations, Milla gained a reasonable understanding that Garlick had greater

FiOS experience than Fields. Indeed, Fields has provided no evidence suggesting that Garlick

did not possess greater FiOS experience. Fields has presented evidence that she possesses greater

CoFEE experience than Garlick. However, Milla considered FiOS-related knowledge and

experience, rather than CoFEE-related knowledge and experience, to be the "most important"

factor he considered in making the ultimate decision as to which employee to retain. Doc. No. 29

Ex. 2 at 34.

　　　　At the time Milla made the decision to terminate Fields' employment, he had received

attendance logs indicating that Fields was on short-term disability or working half days.

However, Fields has not shown that Milla knew that Fields had recently been treated for breast

cancer. During the conference call in which the managers and Milla discussed the RIF, there is

no indication, and Fields has not alleged, that Fields' health situation ever came up.

　　　　Taken as a whole, these circumstances suggest that Fields was terminated from her

position as Senior Consultant because she worked primarily with the CoFEE system and lacked

Garlick's substantial FiOS-related requirements experience. It is not clear whether Smothers had

greater FiOS experience than Fields. Regardless, Smothers was ranked ahead of Fields back in

December 2008, before Fields was diagnosed with breast cancer, based on subject matter

expertise and the types of projects each supported. Accordingly, the Court finds that the employees retained by Verizon were not performing at a lower level than Fields.

Accordingly, the Court finds that Fields has not established a *prima facie* case of disability discrimination. Even if Fields had established a *prima facie* case, Verizon has presented legitimate, non-discriminatory reasons for terminating Fields pursuant to the RIF: Fields' lack of direct, significant requirements experience working on FiOS-related projects. The Court does not find that Fields presented any evidence to show that Verizon's legitimate, non-discriminatory reasons were pretextual. Fields has not shown or even suggested that Milla did not reasonably believe that Fields lacked significant FiOS-related experience. Moreover, Fields has not shown that her breast cancer played any role in Milla's decision or that he was even aware of her diagnosis. Rather, the most Fields can show is that Milla knew that Fields was on short-term disability and working half-days. Fields has also not shown that her breast cancer or the fact that she was on short-term disability was ever discussed during meetings relating to the November 2009 RIF. For these reasons, the award of summary judgment to Verizon is appropriate on Fields' disability discrimination claim.

B.    Retaliation

In count two, Fields alleges that Verizon retaliated against her in violation of the FMLA when, in response to her taking leave for surgery and chemotherapy following her breast cancer diagnosis, Verizon terminated her employment. Verizon contends that Fields cannot establish a *prima facie* case under these facts.

The Court analyzes FMLA retaliation claims under the *McDonnell Douglas* framework. *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541 (4th Cir. 2006).  A *prima facie* case for

retaliation exists where: (1) the plaintiff engaged in a protected activity; (2) the defendant took adverse action against her; and (3) the adverse action was causally connected to her protected activity. *Id.* (citing *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)).

The protected activity cited by Fields is her taking FMLA leave for surgery and chemotherapy following her May 21, 2009 breast cancer diagnosis. This activity is protected under the FMLA. *See* 29 U.S.C. § 2601 *et seq*. Thus, Fields has alleged that she engaged in a protected activity and the first element of the *prima facie* case is satisfied. Fields also clearly suffered an adverse employment action when she was terminated from her Senior Consultant position in November 2009 pursuant to the RIF.

However, Fields has not alleged a sufficient nexus between her taking FMLA leave and her termination. While Fields asserts that Milla received attendance logs which indicated that Fields was on short-term disability or working half-days, there is no evidence that Milla was ever aware that Fields was on FMLA leave. *See Morrow v. Verizon Penn., Inc.*, 2011 WL 710226, at *9 (W.D. Pa. Feb. 22, 2011) ("it is fundamental that short-term disability leave is not synonymous with FMLA leave"). Fields has produced no evidence other than her subjective belief that she was terminated because she took FMLA leave. Fields' retaliation claim also fails because, for the reasons stated in the discrimination section above, the Court finds that Verizon presented legitimate reasons for terminating Fields pursuant to the RIF that Fields has not shown to be pretextual. Accordingly, Fields' retaliation claim must also be dismissed.

**IV.      CONCLUSION**

For the foregoing reasons, Verizon's motion for summary judgment is GRANTED. A

separate order will follow.


September 13, 2011                                        /s/
          Date                                        Alexander Williams, Jr.
                                                      United States District Judge